IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CHARLES KAUFMAN, | ) Civil Action No.: 8:13-2345-BHH |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TECHTRONIC INDUSTRIES NORTH AMERICA, INC.; ONE WORLD TECHNOLOGIES, INC.; and RYOBI TECHNOLOGIES, INC., | ) **OPINION AND ORDER** |
| | ) |
| Defendants. | ) |

This matter is before the Court on the defendants' motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. (ECF No. 5.) The defendants contend that application of S.C. Code § 15-5-150 bars suit in this Court.

## BACKGROUND

The plaintiff commenced this product liability action on August 28, 2013, alleging claims of strict products liability, negligence, breach of implied warranty of fitness, breach of warranty of merchantability, and reckless, willful or malicious conduct. (See generally Compl.) The plaintiff alleges that this suit "arises out of the serious and permanent personal injuries suffered by Plaintiff on or about December 4, 2009," while using a Ryobi table saw. (Compl. ¶ 7.) The plaintiff is a resident of Massachusetts (Compl. ¶ 1); the subject accident ostensibly occurred in Massachusetts (Compl. ¶¶ 1, 7, 18); and the plaintiff purchased the subject saw outside of South Carolina. Each of the defendants are incorporated in and organized under the laws of the State of Delaware. (Compl. ¶¶ 2-4.)

1

**STANDARD OF REVIEW**

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009). Notably, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" do not qualify as well pled facts.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health*

2

*Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).  "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ."  *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

## **DISCUSSION**

The defendants argue that the South Carolina Door Closing Statute ("Statute") bars suit in this Court.  *See* S.C. Code § 15-5-150. Specifically, defendants contend that suit here is impermissible under the Statute because the plaintiff is a non-resident suing a resident corporation over events that did not occur in the State of South Carolina.  The South Carolina Door Closing Statute states:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in circuit court:
>
> (1) By any resident of this state for any cause of action; or
>
> (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or subject of the action shall be situated within the State.

*Id.*  It is well established that a South Carolina federal court exercising diversity jurisdiction "must apply § 15-5-150 'unless there are affirmative countervailing federal considerations.'" *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir. 1980) (quoting *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60 (4th Cir. 1965)).

As an initial matter, there are two significant difficulties in the plaintiff's attempt to rejoin application of the statute.  First, there is no factual dispute between the parties that the defendants are domestic corporations; the plaintiff is not a resident of this State; and

3

the underlying factual circumstances occurred elsewhere than in South Carolina.[1] (Compl. ¶¶ 1, 7, 18; Pl. Resp. at 5.) In other words, the elements of the Statute are agreed to be satisfied. Secondarily, the plaintiff has not at all argued the presence of "countervailing federal considerations" as required. *See Rollins*, 634 F.2d at 739. By the express language of *Rollins*, in the absence of such a showing, the undersigned is constrained to apply the Statute and bar suit. For this reason alone, the Court would dismiss the case.[2] The plaintiff, however, makes various legal and constitutional challenges to application of the Statute in this case, which the Court would address briefly in turn, even as it also

---

[1] A constellation of averments suggests that the injury occurred in Massachusetts. (Compl. ¶¶ 1, 7, 18.) The plaintiff has had ample opportunity to argue either as a matter of pleading or fact that this is an unestablished element of the Door Closing Statute. He has not. (See Pl. Resp. at 5.) Indeed, if the injury had occurred in South Carolina the plaintiff would have no need to have gone to the lengths he has to contest the Statute on other grounds. The Court considers this fact conceded.

[2] As stated, the Statute does not apply where "there are countervailing federal considerations." *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 65 (4th Cir. 1985); *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 5463 F. Supp. 2d 544, 549 (D.S.C. 2006) ("It has long been held that federal courts sitting in diversity must apply Section 15-5-150 unless countervailing federal interests preclude its application."). Those considerations include the Full Faith and Credit and Privileges and Immunities clauses. *Szantay*, 349 F.2d at 65-66. But, *Szantay* has been almost completely limited, by the Fourth Circuit Court of Appeals, to circumstances in which the plaintiff does not have an alternative forum in which to assert his claims. *See Rollins*, 634 F.2d at 740 (holding there were no countervailing federal considerations because the plaintiff could have sued in "North Carolina, the state of the Defendant's incorporation."); *Bumgarder v. Kenn Corp.*, 593 F.2d 572, 573 (4th Cir. 1979); *California Buffalo v. Glennon-Brittan Group, Inc.*, 910 F. Supp. 255, 257 (D.S.C. 1996) ("The Fourth Circuit Court of Appeals has since limited the need to apply *Szantay* balancing to situations in which a plaintiff has no other available forum in which to bring its action."); *Collins v. R.J. Reynolds Tobacco Co.*, 901 F. Supp. 1038, 1043 n.2 (D.S.C. 1995) (distinguishing *Szantay* because the plaintiff could have filed suit in other jurisdictions).
    Here, there is no suggestion that the claim could not have been brought in Massachusetts. And, so any material federal consideration is, therefore, wanting. *See Rollins*, 634 F.2d at 740. Said again, *Rollins* instructs that because the plaintiff could have brought suit in Massachusetts, other federal considerations like the Full Faith and Credit Clause and the Privileges and Immunities Clause need not be weighed. It should be noted that, while no procedural bar to the plaintiff's ability to file elsewhere has been argued, "a plaintiff's failure to timely file suit in the more logical, convenient forum does not constitute a countervailing consideration favoring the exercise of federal jurisdiction." *Rollins*, 634 F.2d at 740.

4

declines them.

## I.     The Purposes of the Door Closing Statute

The plaintiff would first emphasize the purposes of Door Closing Statute, *see Murphy v. Owens-Corning Fiberglas Corp.*, 590 S.E.2d 479, 481 (S.C. 2003), and how they are not served in application of it here. The Statute's purposes.[3] have been articulated by the South Carolina Supreme Court as follows:

(1) It favors resident plaintiffs over nonresident plaintiffs;

(2) It provides a forum for wrongs connected with the State while avoiding the resolution of wrongs in which the State has little interest; and

(3) It encourages activity and investment within the State by foreign corporations without subjecting them to actions unrelated to their activity within the State.

*Murphy v. Owens-Corning Fiberglas Corp.*, 590 S.E.2d 479, 481 (S.C. 2003) (citing *Farmer v. Monsanto Corp., supra citing Rosenthal v. Unarco Industries, Inc.*, 278 S.C. 420, 297 S.E.2d 638 (1982))

The Court believes that this approach is the wrong end of the lens, so to speak. The Door Closing Statute need not prove itself anew each time. As stated, it *applies*, barring the presence of some countervailing federal consideration not present hear. *See Rollins*, 634 F.2d at 740. In *Murphy*, the South Carolina Supreme Court revisited these underlying policies only in the context of considering the novel issue of "when a latent disease cause

---

[3] As a tip of the cap, the undersigned would concede the plaintiff's concerns that the Door Closing Statute purposes imply a kind of antiquated effect that may not be fully acknowledging of the realities of modern business and even litigation practice and efficiencies. But, as will be discussed, the Statute's application has been too consistently affirmed by the State of South Carolina and this federal circuit for the undersigned to make some independent pronouncement about it.

of action 'arises' for purposes of the statute." *Murphy*, 590 S.E.2d at 481.  The plaintiff, in *Murphy*, was physically present in the State of South Carolina and was exposed to a harmful substance there.  The supreme court, therefore, was reasonably faced with whether exposure to an injurious substance in South Carolina provides a sufficient basis to determine that the plaintiff's claims "arose" in South Carolina for purposes of the Door Closing Statute.

By contrast, there is no legal or factual question about where the plaintiff's claim *arose* in this case –- Massachusetts.  (Compl. ¶¶ 1, 7, 18; Pl. Resp. at 5.)  The defendant on Motion to Dismiss has had occasion to dispute this view as a matter of pleading or fact and has not.  Instead, the plaintiff appears to believe that application of the Door Closing Statute in any given case turns on an evaluation of whether the policies are served by such application.  In other words, the Statute may somehow be revetted each time for appropriateness.  But, as far as the Court has ever known, such approach is not how legislative interpretation and enforcement works.  By the terms of the Statute and subsequent case law, the Statute applies as written.  The plaintiff does not get to escape the Statute by arguing that on the subjective facts of this case it does not do all that the legislature privately intended.  The Court simply disagrees that *Murphy* allows for this kind of analysis.

To that same end, the Court agrees with the plaintiff that *Murphy* does not amount to some exception to the Door Closing Statute.  The *Murphy* Court simply analyzed and applied how the Statute's "arose in" requirement applied in latent disease cases.  The *Murphy* Court held that, in such cases, a plaintiff's claims "arose in" South Carolina for purposes of the Door Closing Statute when "the exposure itself occurred within the State."

*Id.* at 482.  There is no analogizing that determination here.  As discussed, there is literally no allegation of contact by the plaintiff with South Carolina.  The injury occurred elsewhere.  The plaintiff even admits that his cause of action "arose" outside of South Carolina, acknowledging that "the [Door Closing] statute focuses on where a cause of action arises, which, under South Carolina tort law, is the place of the injury." (Pl. Resp. at 5.)

There is no basis for some exception, extrapolated from *Murphy* or independently imagined.  The plaintiff would simply like the Statute to be another way.  It is not.  And, without the inkling of an amenable precedent to it, the Court would decline any invitation to fashion some products liability exception.

## II.     Constitutionality of the Door-Closing Statute

To great lengths, the plaintiff also claims that the Statute violates the Privileges and Immunities clause of the United States Constitution.  The Privileges and Immunities clause states simply that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. IV, § 2.  But, the Fourth Circuit has already resolved it in the negative – the Statute is not unconstitutional.  *See Szantay*, 349 F.2d at 65.  It is precisely because the Statute does not violate the Privileges and Immunities clause that the Fourth Circuit was compelled to include it and the Full Faith and Credit clause, in a subordinate status, as "federal considerations."  *Id.*

*Szantay* expressly recognizes that the South Carolina Door Closing statute is not directly violative of either the Full Faith and Credit or the Privileges and Immunities Clauses.  First, with respect to the Privileges and Immunities Clause, the Fourth Circuit, in *Szantay*, transitioned, "While such discrimination may not be unconstitutional . . . ."  *Id.*  And, again, concerning the Full Faith and Credit Clause, the court expressly acknowledged

7

that the "South Carolina 'door-closing' statute does not directly violate the demands of this constitutional principle." *Id.*  The use of the words "may" and "not directly" are not somehow qualifying or speculative about the constitutionality of the Statute.  Rather, they are phrases of contrast, plainly indicating that even though the Statute could not *actually* be considered unconstitutional, it nevertheless implicates important constitutional concerns – restyled as "federal considerations."  If the Statute was in fact violative of those constitutional provisions, then the Court would have simply concluded as much in the first instance.  There would be no need to recharacterize existing constitutional constraints as federal interests to be discretionarily considered on a case-by-case basis.  Indeed, that is the whole necessity of the *Szantay* balancing test – to still capture for consideration constitutional concerns that are not themselves, in the first instance, fully dispositive of the appropriateness of the Statute.[4]

The Fourth Circuit may disagree that its decision in *Szantay* is so clear; it appears to escape the parties.  But, there is a logical implication in language usage, described

---

[4] Admittedly, in rejecting the unconstitutionality of the Statute, the Fourth Circuit does not include any particular analysis, even as it does include case citation.  With respect to the Privileges and Immunities Clause the Court would say a little more.  That clause protects only those privileges and immunities that are "fundamental." *McBurney v. Young*, 133 S. Ct. 1709, 1714-15 (2013). And, the United States Supreme Court has certainly included "in a partial list of such fundamental privileges 'the right of a citizen of one state . . . to institute and maintain actions of any kind in the courts of' another." *Canadian N. Ry. Co. v. Eggen*, 252 U.S. 553, 560 (1920) (citation omitted). But, the Supreme Court has made clear that "the constitutional requirement is satisfied if the non-resident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens." *Id.* at 562. Modifications in the availability of access are not *per se* unconstitutional, therefore.  And, the fact that the non-resident may only bring suit against a domestic corporation in South Carolina when the incident giving arise occurred in that state, a reasonable state interest, coupled with the protection that the plaintiff must be ensured of forum, elsewhere, seems sufficient.
  Regardless, of the Court's independent view, the Fourth Circuit has already said that it is.

8

above, that until undone, persuades the undersigned that there already exists controlling Circuit authority which answers in the negative any question concerning the constitutionality of the Statute in light of the Privileges and Immunities clause. It is telling that such constitutional challenges essentially appear nowhere else subsequently, either in the state or federal courts of South Carolina, and, that at both levels the statute has been consistently enforced. The Court, therefore, would be hesitant to reach to reverse an existing constitutional determination where no South Carolina, state or federal, case has ever done so; quite to the contrary there is an historically lengthy standard of affirmation. *See Central R.R. & Banking Co. v. Georgia Construction & Investment Co.*, 11. S.E. 192, 203 (S.C. 1890) ("[I]t is very manifest that the object of [the Door Closing Statute] was, not to so extend the jurisdiction of the courts of this state as to throw open their doors to any person, from any quarter of the globe, to demand redress for injuries received anywhere, but simply to secure the inhabitants of the state, for which the constitution was made, access to the courts for redress of any injury which they may have received.").

The plaintiff would characterize some of his constitutional challenge, "as applied." Notwithstanding the nomenclature, the plaintiff's objection still appears facial in nature. He has not differentiated some application of the statute unique to the particulars of this case that are not already contemplated by the plain and express language of the Statue. The plaintiff's evaluation of the Statute's purposes in light of its application in this case (Pl. Resp. at 18-30) are not considerations that would somehow not always be present. Indeed, the plaintiff, in this tack, continues only to challenge generally the legislative motives of the Statute and whether the purposes serve them. *See id.* The circumstances factually are simply on all fours, so to speak, with the Statute. It is a quintessential case

9

not an exceptional one.

The Statute is not unconstitutional, facially or as applied.

## **CONCLUSION**

For the foregoing reasons, the court **GRANTS** Defendants' motion to dismiss. (ECF No. 5).  The case is hereby dismissed *without prejudice*.[5]

IT IS SO ORDERED.


/s Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
September 26, 2014

---

[5] The Court declines to make a determination with prejudice concerning the applicability and effect of any statute of limitations.